## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### MIAMI DIVISION

### CASE NO. 22-21723-CIV-MORENO/GOODMAN

SIMON URENA,

      Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

      Defendant.

_____/

### REPORT AND RECOMMENDATIONS ON SUMMARY JUDGMENT MOTIONS

      This case challenges a denial of social security benefits. Plaintiff Simon Urena ("Urena") and Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Commissioner"), filed cross-motions for summary judgment. [ECF Nos. 19; 23]. The Commissioner's summary judgment motion also served as her opposition response to Urena's motion. *Id.* Urena filed a response to the Commissioner's motion which was also his reply. [ECF No. 24]. The Commissioner did not file an optional reply.

      According to the Clerk's directive in these types of administrative appeals, all dispositive matters have been referred to the Undersigned for a Report and Recommendations. [ECF No. 2].

As explained below, the Undersigned respectfully recommends that the District Court **grant** Urena's summary judgment motion, **deny** the Commissioner's summary judgment motion, and **remand** the case back to the Commissioner.

## I.    Procedural Background

On August 7, 2018, Urena applied for disability insurance benefits, alleging a disability onset date of January 1, 2017. (R. 119, 435-36).[1] Urena alleges disability due to neck pain herniated discs, neck pain degenerated discs, neck pain arthritis, back pain herniated discs, back pain degenerated discs, and back pain arthritis. (R. 474). The Commissioner denied the application initially and on reconsideration. (R. 180-82, 186-91). Plaintiff requested and obtained an administrative hearing on April 24, 2020 before Administrative Law Judge Gracian A. Celaya (the "ALJ"). (R. 85-118, 192-93). After an unfavorable decision (R. 147-72), Plaintiff requested review of the ALJ's decision by the Appeals Council. (R. 298-303). The Appeals Council remanded the claim for a new hearing and decision (R. 173-78).

After a second hearing on August 25, 2021 (R. 46-78), the ALJ concluded that Urena was not disabled. (R. 16-38). The Appeals Council denied review of the ALJ's decision. (R. 1-3). The Commissioner's final decision is now subject to review.

---

[1]    Citations to ("R. __") refer to pages of the administrative record transcript. [ECF No. 15].

## II.     Factual Background

Urena was 49 years old on the alleged onset date (January 1, 2017) of his disability. (R. 120). He completed high school and one year of college. (R. 97). He has past relevant work as a police officer. (R. 55, 475).

At the time of the August 25, 2021 administrative hearing,[2] Urena lived in his own home with his 16-year-old son and dog. (R. 54). He stated that he had recently acquired the dog and that it was a service dog. (R. 68).

He reported problems with his neck and lower back and "a lot of pain" radiating from his lower back to his legs and feet. (R. 55-56). He described "constant pain" in his neck and back. (R. 57). He said this pain affected him daily because he had to "keep moving and turning and tossing" in order to "find a comfortable position for [his] neck and mostly his lower back." *Id.* He testified that, although he had been prescribed medication, "[it was] not really doing much for [him]" and "giving [him] side effects." *Id.*

He reported "a lot of pain" radiating from his neck to his left arm (R. 56) and frequent numbness and tingling in the middle, ring, and pinky fingers of his left hand.

---

[2]     Urena also testified at an earlier administrative hearing held on April 24, 2020. (R. 85-118). Therefore, much of Urena's testimony at the second administrative hearing focused on his condition since the first administrative hearing. Nonetheless, the ALJ's Decision makes clear that he considered Urena's testimony from *both* hearings. *See, e.g.,* (R. 20 (noting that at the initial hearing, "the claimant acknowledged that his daily activities included taking his son to and from school; going to doctor's appointments; cooking for his son; and helping his son with his homework."); *id.* at 22-23 (discussing Plaintiff's testimony at the "remand" hearing)).

(R. 56).

Urena also reported feeling "pins and needles and numbness" in his feet, the back of his leg, and towards his buttocks if he sat, stood, or walked for too long. (R. 56). He stated that he had to massage his feet before getting out of bed because "as soon as [he] put [his] feet down," he felt as if "two nails [were] going through . . . the bottom of [his] [feet]." (R. 57-58).

Nonetheless, Urena was able to walk the dog "around maybe the block, maybe like half a block," before feeling pain in his feet and lower back. *Id.* He estimated that he could walk five to ten minutes, before having to stop. (R. 68-69).

He also reported right shoulder pain. (R. 59). He described the pain as if being stabbed with a knife. *Id.* He reported experiencing this sharp pain when he attempted to reach out laterally or if he tried to lift his arm up to a certain point. (R. 59-60).

Urena testified that he had trouble sleeping, suffered from insomnia, had been diagnosed with sleep apnea and sometimes used a CPAP machine. (R. 63). He also stated that his pain affected his ability to sleep and that his lack of sleep caused him to feel "very, very tired" during the day. (R. 63-64).

He frequently experienced migraine headaches with pain in his forehead; and pain and pressure below his eyes, around his nose, and cheekbones. (R. 64). He also reported having tinnitus, a constant ringing in his ears, and sometimes losing hearing completely. (R. 70).

At the time of the hearing, Urena was seeing a psychiatrist for his depression. (R. 64). He reported staying home because of his pain, not wanting to do anything, and not being able to exercise. *Id.* He felt frustrated and upset because he could not do the things he had been able to do, sometimes taking it out on his son. (R. 64-65).

He also reported seeing a psychologist and a social worker and stated that "they" had him on medication, which he did not like taking. (R. 65). He had "some sessions" with a chiropractor and received some acupuncture. (R. 66).

Earlier that year, Urena traveled to the Dominican Republic for his father's 80th birthday. (R. 69). He also traveled to Georgia to see his son and grandson. *Id.* He acknowledged telling his therapist that he "engaged in plenty of recreational activities in the mountains" on this trip. (R. 70).

During the August 25, 2021 administrative hearing, the ALJ also heard testimony from the Vocational Expert ("VE"). (R. 70-77).

The ALJ posed the following hypothetical to the VE:

imagine a hypothetical individual with the claimant's medical, educational, and vocational profile . . . who is capable of performing a full range of light work with the following additional limitations. This individual can frequently kneel and crouch, and occasionally crawl and stoop. Can never climb ramps or stairs. Can never climb ladders, ropes, or scaffolds. Can frequently reach and frequently handle, finger, and feel. Can never operate foot controls. Can never work at unprotected heights or with hazards. Can follow detailed, but uninvolved instructions. Can concentrate in two-hour increments sufficiently to complete an eight-hour workday. Can frequently interact with coworkers, supervisors, and the public. And is limited to work environments that require a hearing speech presented at normal conversational volume. . . . [C]an that individual perform the claimant's

past work?

(R. 72-73).

The VE testified that this hypothetical individual could not perform Urena's past work. (R. 73). The VE also testified that this individual could perform the work of an office helper, mailroom clerk, or warehouse checker, all SVP 2 jobs. *Id.*

Urena's non-attorney representative cross-examined the VE. On cross-examination, the VE explained that detailed but uninvolved instructions could include SVP 3 or SVP 4 jobs, "[b]ut in order to be very conservative, [the VE] interpreted that to be unskilled work[.]" (R. 74). He interpreted this term to mean "a job that can be learned in -- by short demonstration or within 30 days." *Id.*

Plaintiff's representative also posed her own hypothetical:

> based on the physical limitations in Exhibit 11F.[3] Assume a hypothetical individual the same age, education, and past work experience of this claimant. Assume further that the hypothetical individual could sit for a total of two hours in an eight-hour workday, could stand or walk for two hours in an eight-hour workday. He would need to get up and move around every [two] hours for at least 15 minutes before he could sit again. He can lift and carry occasionally 20 pounds, frequently 10 pounds. And he would need a low stress job. Similarly, he would be unable to perform any kneeling, bending, or stooping and would need to avoid heights. Would such a hypothetical individual be able to perform any of the claimant's past relevant work?

(R. 74-75 (footnote added)).

---

[3]     Office Treatment Records -- Spinal Impairment Questionnaire, dated 02/07/2019, from Dr. Allan Vrable. (R. 740-46).

The VE testified that this hypothetical individual would not be able to perform Plaintiff's past relevant work "on a full-time, competitive basis" and would not be able to perform any other work existing in significant numbers in the national economy. (R. 75). The VE further testified that if he was expected to miss work three times per month due to his impairments, then this individual would not be able to perform any other work existing in significant numbers. *Id.*

The VE explained that based on his "30 years as a vocational rehab counselor and speaking with employers about policies, . . . a worker [who] is absent from work [two] times or more in a work month, and the employer takes notice, and the employer determines that there is no correction available, it's very likely termination will occur." (R. 75-76).

The VE also testified that there would be no work existing in significant numbers for a hypothetical individual who "needed to take an unscheduled break every hour for 20 to 30 minutes[.]" (R. 76). He explained that:

> based on [his] experience in the field over the years, it was -- it was necessary to understand what competitive work consists of. It -- it became [his] opinion that competitive work is -- consists of not being classified by your employer as a poor worker. [He] think[s] a worker that is off task 10% or more of the workday on a day-in, day-out basis will eventually be classified as a poor worker by their employer. And -- and the amount of time you have here is -- is certainly going to be 10% or more in addition to normal breaks.

*Id.*

Urena's representative also asked the VE about a sit/stand option at will:

Q.      And if a hypothetical individual needed a sit/stand option at will, how would that impact his ability to perform the jobs that you identified and other jobs in the light, unskilled work setting?

A.      I did -- did indicate officer worker and mailroom clerk. Of course, you can't do those jobs with a sit/stand at will. I did put the warehouse checker in there. That one can be performed either sitting or standing as long as you don't have the off task at -- at a level that's not acceptable. There are a few other examples that I could provide. And I think that certainly there's – there's some, you know, you're – you're – you're taking out, you know -- you know, a lot of jobs. I could just say to be [INAUDIBLE] that are in the light category when you -- when it's necessary for a sit/stand option.

(R. 76-77).

## III.   Applicable Legal Standards

In evaluating a claim for disability benefits, an ALJ must follow the five steps outlined in 20 C.F.R. §§ 416.920(a) and 404.1520, which the Undersigned summarizes as follows:

1.   **Step one**. Is the claimant performing substantial gainful activity? If not, then an ALJ next determines:

2.   **Step two**. Does the claimant have one or more severe impairments? If the claimant does, then an ALJ next considers:

3.   **Step three**. Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled; if not, then an ALJ must determine the claimant's residual functional capacity ("RFC"); and then determine:

4.   **Step four**. Based on the RFC, can the claimant perform his or her past relevant work? If so, then the claimant is not disabled. If the claimant cannot perform his or her past relevant work, then an ALJ must finally determine:

5.   **Step five**. Based on the claimant's age, education, and work experience, and

the RFC, can he or she perform other work? If so, then the claimant is not disabled. If not, then the claimant is disabled and entitled to benefits.

*See Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

The claimant bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). In reviewing the decision, the Court must consider the record as a whole and determine whether the ALJ applied the correct legal standard and whether substantial evidence in the record supports the ALJ's findings of fact. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips*, 357 F.3d at 1240 n.8 (internal citation omitted).

The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal citation omitted). And "[i]f the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (internal citation omitted).

The Court is authorized to enter a judgment affirming, modifying, or reversing the decision of an ALJ, with or without remand. 42 U.S.C. § 405(g); *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1302 n.13 (11th Cir. 2000).

## IV.   The ALJ's Findings

In denying Urena's claim for benefits, the ALJ followed the sequential five-step

evaluation process for social-security claims. (R. 16-38). At step one, the ALJ concluded

that Urena had not engaged in substantial gainful activity since January 1, 2017, the

alleged onset date. (R. 19).

At step two, the ALJ concluded that Urena had the following severe impairments:

disorders of the spine, chronic pain, bursitis and osteoarthritis of the right foot, plantar

fasciitis of the left foot, disorders of the right shoulder, depression, migraine headaches,

bilateral neuromas, fibromyalgia, disorder of the right wrist, sleep apnea, insomnia, and

tinnitus. *Id.*

At step three, the ALJ concluded that Urena did not have an impairment or

combination of impairments classifiable as a listed impairment in 20 C.F.R. Part 404,

Subpart P, Appendix 1. (R. 19-21). Next, the ALJ determined that Urena has the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except [he] can
> frequently kneel and crouch. He can occasionally crawl and stoop. He can
> never climb ramps and stairs. He can never climb ladders, ropes, or
> scaffolds. He can frequently reach. He can frequently handle, finger, and
> feel. He can never operate foot controls. He can never work at unprotected
> heights or with hazards. He can follow detailed, but involved [sic][4]

---

[4]     There is a typographical error in the Decision. At the August 25, 2021
administrative hearing, the ALJ's hypothetical to the VE included the following
limitation: "[c]an follow detailed, but uninvolved instructions." (R. 72). However, in the
Decision, the ALJ wrote this limitation as "can follow detailed, but *involved* instructions."
(R. 21 (emphasis added)). The parties agree that this RFC limitation consists of "detailed,
but *un*involved instructions." *See* [ECF Nos. 19, p. 25 (discussing RFC limitations,
including "limited to follow detailed but **un**involved instructions" (emphasis added));

instructions. He can concentrate in two-hour increments sufficiently to complete an 8-hour workday. He can frequently interact with coworkers, supervisors, and the public. He is limited to work environments that require hearing and speech presented at normal conversational volume.

(R. 21 (footnote added)).

At step four, the ALJ concluded that Urena was unable to perform his past relevant work as a police officer. (R. 36-37).

Lastly, at step five, the ALJ found that there are jobs existing in significant numbers in the national economy that Urena can perform, including office helper, mailroom clerk, and warehouse checker. (R. 37-38). Accordingly, the ALJ found that Urena had not been under a disability from January 1, 2017 through September 17, 2021, the date of the ALJ's decision. (R. 38).

## V.    Analysis

Urena raises three arguments in support of remand. [ECF No. 19]. First, he argues that the ALJ failed to properly evaluate the medical opinion evidence and to properly determine his RFC. *Id.* at 24-34. Second, he claims the ALJ failed to properly consider his subjective testimony. *Id.* at 34-37. Third, he contends that the ALJ's hypothetical to the VE was flawed because he "fail[ed] to accurately account for . . . [Urena's] moderate

---

23, p. 3 ("The ALJ found Plaintiff could follow detailed, but **u**ninvolved instructions[.]" (emphasis added))]. Therefore, it is not necessary to further address this typographical error.

restrictions in concentration, persistence, or pace[.]" *Id.* at 37. For the reasons discussed below, the ALJ's error in his assessment of the opinion evidence warrants a remand.

**A.**     ***The ALJ's Assessment of the Opinion Evidence and Plaintiff's RFC***

      **1.**     **Opinions of Drs. Vrable, Trelles, and Suarez**

At the outset, Plaintiff takes issue with the ALJ's findings that the opinions of Drs. Vrable, Trelles, and Suarez were not persuasive.

Because Urena applied for disability insurance benefits on August 7, 2018 (R. 119), the revised regulations apply. *See Callahan v. Comm' r of Soc. Sec.*, No. 22-12701, 2023 WL 3736042, at *1 (11th Cir. May 31, 2023) ("For claims filed on or after March 27, 2017, the SSA's new regulations apply." (citing 20 C.F.R. § 404.1502c)).

The revised regulations explicitly remove the "treating source rule," which required a certain level of deference to a claimant's treating physician. *Compare* 20 C.F.R. § 416.920c *with* C.F.R. § 416.927. Under the revised regulations, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, in evaluating medical opinions and prior administrative medical findings, the SSA considers the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 416.920c(c)(1)-(5).

The SSA prioritizes (c)(1), supportability, and (c)(2), consistency, when assessing

the persuasiveness of any given medical opinion. *See* 20 C.F.R. § 416.920c ("The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency[.]"). "[T]he ALJ must explain how he or she considered the factors of supportability and consistency, but the ALJ is generally not required to explain how he or she considered the other three factors." *Elshater v. Kijakazi*, No. 22-CV-60466, 2022 WL 14890164, at *4 (S.D. Fla. Oct. 6, 2022), report and recommendation adopted, No. 22-60466-CIV, 2022 WL 14813795 (S.D. Fla. Oct. 26, 2022) (citing 20 C.F.R. § 404.1520c(b)(2)-(3)).

Here, the ALJ explained his findings regarding the persuasiveness of the medical opinions of Drs. Vrable, Trelles, and Suarez as follows:

The ALJ was "generally unpersuaded" by the opinion of treating physician Dr. Vrable -- that Urena "[was] capable of less than a full range of sedentary work." (R. 35). The ALJ explained that:

> Dr. Vrable's sitting, standing and walking limitations [were] . . . simply **inconsistent with objective findings on imaging studies, physical examinations and [Urena]'s recreational activities**. (Ex. 8F, 26F/17, 26F/20, 21F/2, 26F/18, 26F, 86-88, and 33F/75). Dr. Vrable also offered additional postural, manipulative, and other non-exertional limitations that are not framed in vocational terms but have nevertheless been considered in my assessment of the claimant's residual functional capacity.

*Id.* (emphasis added).

The ALJ was also not persuaded by the opinion of Dr. Trelles, who treated Urena at the VA Hospital. *Id.* He stated:

**Dr. Trelles opined that the claimant is limited to less than a full range of sedentary work—specifically to sitting, standing, and walking, combined, for two hours or less over an eight-hour period**. As an initial matter, I note that **Dr. Trelles generally sees the claimant every six months, which is not the frequency of treatment one would expect for an individual with such severe limitations**. I again note that **the limitations, which essentially require the claimant to lie down 18 hours over a 24-hour period, are simply inconsistent with the longitudinal history, objective imaging studies, and clinical examinations in the record**. (Ex. 8F, 26F/17, 26F/20, 21F/2, 26F/18, 26F, 86-88). Finally, I note claimant's primary symptoms, as noted by Dr. Trelles, of **paresthesia bilateral lower extremities and weakness in bilateral lower and upper extremities are inconsistent with not only the objective imaging studies and physical examinations, but with the electrodiagnostic testing as well**. In this regard, it will be recalled that **neither electrodiagnostic study found evidence of cervical radiculopathy, and the repeat electrodiagnostic study on February 7, 2019, found no evidence of lumbar radiculopathy** (Ex. 15F/22 and 15F/44). Nerve conduction studies of the claimant's lower extremities taken on February 20, 2020, were again within normal limits. (Ex. 28F/17—22) **Dr. Trelles' opinion is also inconsistent with the claimant's recent travel to the Dominican Republic and recent visit to his children in Georgia where he engaged in plenty of recreational activities in the mountains**. (*See* August 2021 Hearing Transcript and Ex. 33F/292—293)[.] Dr. Trelles also offered additional postural, manipulative, and other non-exertional limitations that are not framed in vocational terms but have nevertheless been considered in my assessment of the claimant's residual functional capacity.

*Id.* at 35-36 (emphasis added).

Lastly, the ALJ found the opinions of Dr. Suarez to be "wholly unpersuasive." (R. 34). The ALJ explained that:

Dr. Suarez issued a Cervical Spine Impairment Questionnaire and a Lumbar Spine Impairment Questionnaire in which he **opined the claimant is capable of less than a full range of sedentary work**. (Exs. 24F-25F) Indeed, he **opined the claimant could sit up to one hour in an eight-hour work day, and stand and walk up to one hour in an eight-hour workday**. I find these opinions **wholly unpersuasive**. Dr. Suarez's restrictions, **when**

**extrapolated over a full day, limit the claimant to sitting, standing and walking, combined, to no more than six hours over a 24-hour day**. These limitations are **patently inconsistent with the longitudinal record and are markedly inconsistent with the objective medical findings**. Again, with regard to the claimant's cervical spine, an MRI report dated June 18, 2018, noted reduced disc height at C5-C6 and C6- C7, but **did not characterize the height loss as severe** (Ex. 8F). The cervical MRI dated August 5, 2019, found degenerative changes, but noted an otherwise "**unremarkable cervical spine,**" (Ex. 26F/17). The cervical CT scan dated August 2, 2019, found **"mild age-appropriate degenerative changes,"** (Ex. 26F/20), and an MRI taken January 7, 2020 noted the vertebral bodies had **"normal height, morphology and signal."** (Ex. 21F/2). The claimant's latest cervical MRI showed severe pathologies at C5-C6 and C6-C7 and **unchanged mild grade 1 degenerative anterolisthesis** of C2 on C3, but **no significant spinal canal stenosis, cord compression or abnormal cord signal**. (Ex. 33F/56). With regard to the lumbar spine, an August 2, 2019, CT of the lumbar spine reported a "**[n]ormal lumbar spine."** (Ex. 26F/18) An MRI of the lumbar spine performed the same date reported an "**[u]nremarkable lumbar spine."** (Ex. 26F/16). The latest MRI of the lumbar spine showed **stable unremarkable age-appropriate lumbar spine**. (Ex. 33F/53) Finally, objective clinical muscle strength, sensory, and reflex testing conducted in August 2019 was **essentially normal**. (Ex. 26F, pp. 86-88). A recent rheumatology examination showed an **unassisted gait, no focal weakness, and no instability in the bilateral knees**. (Ex. 33F/75)[.] Both opinions contain additional postural, manipulative, and other non-exertional limitations that are not framed in vocational terms but have been considered in my assessment of the claimant's residual functional capacity.

(R. 34-35) (footnote omitted; emphasis added).

As noted above, under the revised regulations (which are applicable to Urena's claim), the only factors an ALJ must explain are supportability and consistency. *Elshater*, 2022 WL 14890164, at *4 (citing 20 C.F.R. § 404.1520c(b)(2)-(3)). Before addressing these factors, the Undersigned will discuss an issue raised by Plaintiff's motion (but not addressed by the Commissioner).

Plaintiff argues that "the ALJ misunderstood the record when he suggested that the opinions from the treating and examining physicians are not credible because their opinions were consistent with a finding [that] Mr. Urena spent most of the day bedridden, which was not supported by the record." [ECF No. 19, p. 31 (citing (R. 34-35)]. Urena notes that:

> The treating and examining medical sources were asked to assess the total hours [he] was able to sit and stand/walk "**in a normal COMPETITIVE FIVE DAY A WEEK WORK ENVIRONMENT ON A SUSTAINED BASIS . . . [i]n an eight-hour day**" ([R]. 743, 1347, 1354) or in his ability to perform the activities "**in a competitive environment on a sustained and ongoing basis (8 hours per day, 5 days per week)**" ([R]. 1490) . . . not how long [he] could sit, stand, or walk outside of a workplace setting, such as in his own home. The ALJ's failure to consider the appropriate context of the statements from the medical sources was error.

*Id.* (capitalization and emphasis in original).

The Commissioner does not directly address this argument -- that the ALJ committed error when he extrapolated Dr. Trelles and Dr. Suarez's opinions[5] from an eight-hour work setting to a 24-hour period. She does argue, generally and throughout her response/summary judgment motion, that the ALJ's assessment of the opinion evidence is supported by substantial evidence. *See, e.g.*, [ECF No. 23, p. 7 ("Because the ALJ properly considered the opinion evidence and the prior administrative medical

---

[5]     Although Plaintiff also cites Dr. Vrable's opinion, [ECF No. 19, p. 31 (citing R. 743)], the ALJ's Decision does *not* state that he extrapolated Dr. Vrable's opinion. *See* (R. 35). Therefore, this argument does not apply to Dr. Vrable and is limited to the ALJ's assessment of the opinions of Dr. Trelles and Dr. Suarez.

findings within the meaning of the revised regulation and substantial evidence supports the ALJ's reasoning and ultimate determination that Plaintiff was not disabled, there was no error")]. While the Commissioner acknowledges that the ALJ extrapolated Dr. Suarez's opinion,[6] she does not respond to Plaintiff's argument that "[t]he ALJ's failure to consider the appropriate context of the statements from the medical sources was error." [ECF No. 19, p. 31].

Failure to respond to an argument concedes the point. *See Woodard v. Comm'r of Soc. Sec.*, No. 6:20-CV-1376-GJK, 2022 WL 3691234, at *4 (M.D. Fla. Jan. 28, 2022) ("The Commissioner did not address this issue, and therefore it is conceded."); *Pecora v. Prime Sec. All., Inc.*, No. 20-CV-24478, 2022 WL 19302229, at *7 (S.D. Fla. Mar. 3, 2022) ("Failure to respond to an argument seeking summary judgment constitutes abandonment of that argument and warrants the entry of summary judgment."); *Grant v. Miami-Dade Cnty.*, No. 13-22008-CIV, 2014 WL 7928394, at *9 (S.D. Fla. Dec. 11, 2014) ("Where a [party] fails to respond to an argument in a motion for summary judgment, he waives the argument." citing *Mitchell v. ConAgra Foods, Inc.*, 448 F. App'x 911, 914 (11th Cir. 2011)).

Moreover, Plaintiff's argument is well taken. Plaintiff cites two cases, *Scandura v. Astrue*, No. 07cv5098, 2009 WL 648611 (E.D.N.Y. March 10, 2009) and *Geiger v. Astrue*, No.

---

[6]     [ECF No. 23, p. 7 ("As the ALJ explained, when Dr. Suarez's restrictions were **extrapolated**, Plaintiff would be limited to sitting, standing, and walking, combined, for no more than 6 hours in a 24-hour day" (citing R. 34) (emphasis added))].

10cv5765-BHS-JRC, 2011 WL 5282712 (W.D. Wash. Oct. 5, 2011), [ECF No. 19, p. 31],[7] in support of his argument that the ALJ erred in his extrapolation of these opinions.

In *Scandura*, the district court found the ALJ had "overstated [a doctor]'s assessment of [the] plaintiff's limitations, claiming that [the doctor's] 'opinion suggest[ed] that the claimant was essentially bed-bound'" when in fact, "the form [the doctor] filled out involve[d] limits to the plaintiff's physical capabilities only in the context of a five[-]day work week." , 2009 WL 648611, at *9.

In *Geiger*, the ALJ improperly discredited the opinion of a doctor based on Plaintiff's testimony regarding her ability to stand because the doctor was opining "in the context of plaintiff's [sic] being 'placed in a normal COMPETITIVE FIVE DAY A WEEK WORK ENVIRONMENT ON A SUSTAINED BASIS'" and "the ALJ simply asked plaintiff how much she could stand in an eight-hour day." 2011 WL 5282712, at *11 (capitalization in original).

Here, Drs. Trelles and Suarez rendered their opinions in the context of a normal, competitive, five-day-week work situation (R. 1347; 1354) or "work in a competitive environment on a sustained and ongoing basis." (R. 1490). The ALJ removed Drs. Trelles and Suarez's opinions from their original context (a work setting) and expanded them to a 24-hour day, which necessarily would have included time outside of work. The ALJ did

---

[7]    Although both *Scandura* and *Geiger* were decided under the old regulations, the observations made in those cases are nonetheless still relevant to the specific issue before this Court.

not provide *any* explanation for why it was reasonable to extrapolate these opinions from an eight-hour workday to a 24-hour day, as opposed to simply considering them in the limited context (work setting) in which they were offered.

In the case of Dr. Suarez, the ALJ first extrapolated the opinion and then discussed its inconsistency with the longitudinal record and the objective medical findings,[8] injecting ambiguity as to whether the ALJ was discussing the initial opinion of sitting/standing/walking up to one-hour a day in an eight-hour workday or the extrapolated sitting, standing, and walking no more than six hours over a 24-hour day. The Undersigned finds that the ALJ's extrapolation of Dr. Trelles and Dr. Suarez's opinions (without any explanation for why this extrapolation was reasonable) supports remand for further consideration of the opinion evidence.

Based on the ALJ's failure to provide any explanation for why it was reasonable to extrapolate these opinions, and the Commissioner's failure to respond to this argument in her brief, the Undersigned respectfully **recommends** that the District Court **remand** this case for further consideration of Dr. Trelles and Dr. Suarez's opinion testimony.

---

[8]     *See* (R. 34 ("Dr. Suarez's restrictions, when extrapolated over a full day, limit the claimant to sitting, standing and walking, combined, **to no more than six hours over a 24-hour day**. **These limitations** are patently inconsistent with the longitudinal record and are markedly inconsistent with the objective medical findings." (emphasis added))).

But for the extrapolation error, the Undersigned would have no difficulty concluding that the ALJ adequately addressed the consistency factor under the regulations.

"[C]onsistency refers to the relationship between the source's opinion and other evidence in the medical record." *Russo v. Comm'r of Soc. Sec. Admin.*, No. 21-14155-CIV, 2022 WL 4770840, at *4 (S.D. Fla. Aug. 31, 2022), report and recommendation adopted sub nom. *Russo v. Comm'r of Soc. Sec.*, No. 21-14155-CIV, 2022 WL 4128866 (S.D. Fla. Sept. 12, 2022). Here, the ALJ's Decision explained why he deemed these at-issue opinions inconsistent with the record evidence. *See* (R. 34 (finding the limitations imposed by Dr. Suarez to be "**patently inconsistent** with the longitudinal record and are markedly inconsistent with the objective medical findings" (emphasis added)); 35 (finding Dr. Vrable's opinion "**simply inconsistent** with objective findings on imaging studies, physical examinations" (emphasis added)), 36 (describing Dr. Trelles' opinion as "**simply inconsistent** with the longitudinal history, objective imaging studies, and clinical examinations in the record" (emphasis added))).

Although not as clearly articulated as the consistency factor, the Undersigned would have also concluded that the ALJ's decision sufficiently addressed the supportability factor, but for the extrapolation error. "Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding[.]" *Stefanski v. Comm'r of Soc. Sec.*, No. 8:22-CV-604-CPT, 2023 WL

2706742, at *3 (M.D. Fla. Mar. 30, 2023). There are no "magic words" an ALJ must use in discussing the section 404.1520c factors. Moreover, the reviewing court should consider an ALJ's decision as a whole because "[a]n ALJ may refer to evidence discussed elsewhere in the decision when evaluating medical opinions or prior administrative medical findings." *Thaxton v. Kijakazi*, No. 1:20-CV-00616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022).

Here, the ALJ discussed records from Drs. Vrable (R. 24-26), Telles (R. 29) and Suarez (R. 27-28) in an earlier part of the Decision. But for the extrapolation error, the Undersigned would have no difficulty following the ALJ's reasoning that the records/notes from these doctors do not support the limitations ascribed to Plaintiff in their opinions. Nonetheless, at least with respect to Drs. Trelles and Suarez, because the ALJ did not consider their opinions solely as written and instead extrapolated them to a 24-hour day, without explaining why it would be reasonable to do so (and because the Commissioner did not address this claim of error), the Undersigned finds that the ALJ's analysis of the opinions of Drs. Trelles and Suarez do not comport with the revised regulatory framework.

Plaintiff's remaining arguments concerning the opinions of Drs. Vrable, Trelles, and Suarez lack merit. Plaintiff points to other portions of the record and argues that they reflect significant abnormalities. [ECF Nos. 19, pp. 27-30; 24, pp. 2-4]. But "[u]nder a substantial evidence standard of review, [the plaintiff] must do more than point to

evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) ("Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence." (citing 42 U.S.C. § 405(g)). The Court may not "reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer*, 395 F.3d at 1210.

Plaintiff also contends that "[t]he ALJ erred by not comparing the opinions from the treating and examining doctors against each other." [ECF No. 19, p. 30]. And, because these opinions "[were] all consistent," the ALJ violated 20 C.F.R. § 404.1520c(c)(2) "by failing to consider the consistency of the evidence that the treating doctors relied upon with the treatment record." *Id.* But, as discussed above, the ALJ adequately addressed the consistency factor.

Additionally, Plaintiff cites no case law to support his position that the ALJ erred because Drs. Vrable, Trelles, and Suarez agreed with each other. When a litigant raises an argument only generally and fails to offer specific factual contentions or fails to support the argument with legal authority, a court may summarily reject the argument. *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 777 (11th Cir. 2016) (treating claimant's perfunctory argument that the ALJ erred by giving great weight to a doctor's testimony

as "arguably abandoned"); *United States Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to address a "perfunctory and underdeveloped argument" with no citation to legal authority and collecting cases).

Urena further argues that "[t]he ALJ . . . erred to the extent that he rejected the opinions from the treating and examining physicians because [he] can engage in some activities of daily living." [ECF No. 19, p. 30]. Plaintiff asserts that "[i]n *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245 (11th Cir. 2019), the [Eleventh] Circuit reaffirmed earlier holdings that ALJs should not place undue weight on a claimant's activities of daily living as contrary to a finding of disability." *Id.*

The Commissioner responds that "[t]he ALJ properly considered Plaintiff's activities as a relevant factor under the regulations, both to assess his subjective allegations and as nonmedical evidence that was relevant to assess the consistency of the medical opinions and prior administrative medical findings with the record." [ECF No. 23, p. 10 n.5 (citing (R. 21-36); 20 C.F.R. § 404.1520c(c)(2))].

*Schink* is distinguishable and does not support the conclusion that the ALJ erred in evaluating the opinion testimony. In *Schink*, the Eleventh Circuit determined that the plaintiff's mostly solitary daily activities -- "watching television, walking the dog, and cooking" -- "[did] not discount the treating physicians' opinions that *Schink* suffered significantly from mental impairments, particularly when he interacted with others." 935

23

F.3d at 1264. At the outset, unlike the ALJ in *Schink*, the ALJ here did not ignore Urena's

mental health impairments and classified his depression as severe.

Moreover, Plaintiff has not shown the ALJ placed an undue emphasis on his ADLs.

An ALJ is not prohibited from considering a claimant's ADLs. *See* 20 C.F.R. § 404.1520c

("The more consistent a medical opinion(s) or prior administrative medical finding(s) is

with the evidence from other medical sources and **nonmedical sources** in the claim, the

more persuasive the medical opinion(s) or prior administrative medical finding(s) will

be." (emphasis added)); *see also Becher v. Comm'r of Soc. Sec. Admin.*, No. CV-21-08273-

PCT-DWL, 2023 WL 2582693, at *10 (D. Ariz. Mar. 21, 2023) (discussing medical opinion

and noting that "[t]he ALJ also rationally concluded that [the] [p]laintiff's ADLs were

inconsistent with severe restrictions").[9]

---

[9]     *See also Daniel v. Comm'r of Soc. Sec.*, No. 1:21-CV-01527-SAB, 2023 WL 1420590, at
*15 (E.D. Cal. Jan. 31, 2023) ("[T]he ALJ found Drs. Wong and Bullard's opinion that [the]
[p]laintiff should be limited to sedentary work was inconsistent with the record showing
[the] [p]laintiff was capable of performing certain ADLs, such as cleaning, driving,
cooking, bathing, and dressing himself. The Court finds the ALJ's analysis of the
supportability and consistency factors relative to Drs. Wong and Bullard's medical
opinions was appropriately considered and is based on substantial evidence from the
record."); *Melendez v. Comm'r of Soc. Sec.*, No. 20-CV-6695 (BCM), 2022 WL 912928, at *7
(S.D.N.Y. Mar. 28, 2022) ("As to consistency, which requires the ALJ to compare the
medical opinion with "evidence from other medical sources **and nonmedical sources**,"
20 C.F.R. § 404.1520c(c)(2) . . ., ALJ Kramzyk appropriately considered [the] plaintiff's
activities of daily living ("ADLs"), including personal care, cooking, laundry, travel on
public transportation, walking (up to three blocks, according to plaintiff's testimony), and
shopping unassisted." (emphasis in decision)).

Plaintiff further faults the ALJ for relying on the opinion of non-examining state agency medical consultant Dr. Gary Smith. Plaintiff states that "[the ALJ] failed to mention that this consultant . . . reviewed Mr. Urena's file on April 15, 2019 when it included medical records only through March 2019 ([R]. 139-[ ]43), two-and-a-half years before the ALJ issued the decision at issue in this appeal." [ECF No. 19, p. 32 (footnote omitted)].

Plaintiff notes that "[t]he Commissioner's current Regulations emphasize that evidence submitted after state agency medical consultants render opinions *might* make those opinions 'more or less persuasive.'" *Id.* (quoting 20 C.F.R. § 404.1520c(c)(5) (emphasis added)). He notes that the ALJ did not explain "why the updated medical record did not call into question the findings from the non-examining consultant" and notes that "opinions from non-examining consultants, standing alone, are not substantial evidence of a claimant's functioning." *Id.* (citing *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988); *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).[10]

---

[10]     Plaintiff also contends that:

It is . . . particularly hypocritical that the ALJ here criticized treating board-certified internist Dr. Trelles **because he allegedly did not see Mr. Urena frequently enough to document the limitations found** ([R]. 35) but the ALJ saw no problem with reliance on opinions from a consultant who reviewed a markedly undeveloped record who never had the opportunity to examine Mr. Urena. **It is illogical to find that Dr. Trelles did not examine Mr. Urena often enough to form a medical opinion on Plaintiff's functioning in a work environment and yet a consultant who never saw the claimant did**.

The ALJ found Dr. Smith's opinion to be "generally persuasive." He explained that

Dr. Smith:

> opined that the claimant [was] capable of light work except limited in the
> left upper extremity; frequent climbing of ramps/stairs; frequent kneeling
> and crouching; occasional climbing of ladders, ropes, or scaffolds;
> occasional stooping; occasional crawling; unlimited balancing; and no
> concentrated exposure to hazards. (Ex. 3A)[.] **[He] [found] this opinion**
> **generally persuasive given its overall consistency with the record**.
> **However, [the ALJ] added additional limitations to more closely conform**
> **to hearing level evidence**. [He explained that] . . . [the formulated] RFC
> [was] consistent with the opinions in the record that the claimant not carry
> anything "heavy" or do any unnecessary bending or crouching. (Exs. 15F,
> p. 13 and 22F, p. 5)[.] The [ ] RFC [was] also consistent with physical
> examinations showing multiple fibromyalgia tender points, reduced lower
> extremity strength on the left, intact sensation, and normal gait. The [ ] RFC
> [was] also consistent with the claimant's engagement in gym-like activities;
> travel to New York; walking his dog multiple times a day; travel to the
> Dominican Republic; going to the Underline Park and taking brisk walks;
> and engaging in plenty of recreational activities while visiting his children
> in Georgia.

(R. 34 (emphasis added)).

The ALJ's Decision, as a whole, makes clear that he considered the record

evidence, including evidence post-dating Dr. Smith's decision. Although the ALJ found

---

[ECF No. 19, p. 32 (emphasis added)].

But Plaintiff misperceives the significance the ALJ ascribed to Urena's infrequent
visits to Dr. Trelles. The ALJ stated: "As an initial matter, I note that Dr. Trelles generally
sees the claimant every six months, **which is not the frequency of treatment one would**
**expect for an individual with such severe limitations**." (R. 35 (emphasis added)). In
other words, the ALJ expected that someone with the limitations assigned by Dr. Trelles
to seek treatment more than twice a year. The ALJ did not state -- as Urena suggests --
that Dr. Trelles' opinion should be deemed less persuasive because he only saw Plaintiff
approximately every six months.

Dr. Smith's opinion "generally persuasive," the ALJ added "additional limitations" which were not found in Dr. Smith's opinion. (R. 34). Thus, Plaintiff has not shown that the ALJ erred in not explicitly mentioning that Dr. Smith's review only included medical records through March 2019. *See Boltz v. Kijakazi*, No. 7:22-CV-14-GMB, 2022 WL 17722386, at *4 (N.D. Ala. Dec. 15, 2022) ("[T[he consulting psychologists' inability to review [the plaintiff]'s entire medical record does not determine the weight of their opinions.").[11]

Nonetheless, on remand, the ALJ may decide that an updated consultative review of the evidence may be helpful. Moreover, although not directly raised in Plaintiff's summary judgment motion, on remand, the ALJ should address the supportability and consistency factors in addressing the persuasiveness of Dr. Smith's opinion.

### 2. Dr. Spar-Alexander and Plaintiff's Mental RFC

Next, Plaintiff argues that the ALJ failed to properly determine his mental RFC. [ECF No. 32, pp. 33-35]. In doing so, Plaintiff argues that the ALJ erred in his consideration of the opinion of Dr. Sarah Spar-Alexander.

The ALJ discussed Dr. Spar-Alexander's opinion in conjunction with another examiner:

> I considered the medical source opinions of Veteran Affairs Compensation and Pension examiners Tamar Ference, M.D. and Sarah Spar-Alexander, Psy.D. dated August 20, 2019. Dr. Ference opined that the claimant's back

---

[11]    Although *Boltz* refers to the "weight" of a medical source opinion, *Boltz* was decided under the revised regulations. 2022 WL 17722386, at *4.

condition impacts his ability to work due to limited prolonged standing and walking as well as bending. (Ex. 26F/90)[.] **Dr. Spar-Alexander opined that the claimant has an occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation**. (Ex. 26F/77)[.]

(R. 36 (emphasis added)).

The ALJ stated that he was:

not persuaded by these opinions, as **the functional limitations [were] not assessed in vocational terms and thus of little probative value**. [He] note[d], however, that **to the extent the limitations [could] be reconciled with the overall record they would not support limitations greater than those assessed in the RFC herein**. Further, these opinions [were] in**consistent with the claimant's reported activities including traveling to New York, Georgia, and the Dominican Republic, engaging in plenty of recreational activities while in Georgia, and taking brisk walks with his son.** Nevertheless, the **limitations are accounted for in the RFC's restrictions and are consistent with Dr. Spar-Alexander's observation that the claimant can generally function satisfactorily**, as well as results of the August 2020 initial cognitive communication evaluation that showed the claimant['s] mild cognitive deficits did not preclude the ability to maintain attention within complex activities and the ability to attend simultaneously to multiple demands with rare minimal cues and his ability to successfully and independently participate in vocational, avocational, or social activities not limited by problem solving skills. (Ex. 33F/182)[.]

*Id.* (emphasis added)).

Plaintiff argues that Dr. Spar-Alexander's statement "that [he] would have a decrease in work efficiency and 'intermittent periods of inability to perform occupational tasks'" *is* within "the Commissioner's definition of a medical opinion related to a claimant's mental functioning as it addresses Mr. Urena's limitations or restrictions in his

ability to perform the mental demands of work, which include[ ] understanding, remembering, maintaining concentration, persistence, or pace, carrying out instructions, responding appropriately to others, and responding to changes in the work environment." [ECF No. 19, pp. at 33-34 (citing 20 C.F.R. § 404.1513(a)(2)(ii))]. Plaintiff thus argues that "the ALJ erred by failing to 'articulate' how those opinions were evaluated as required by 20 C.F.R. § 404.1520c." *Id.* at 34.

The Commissioner responds that Dr. Spar-Alexander's statement is not a medical opinion and therefore the ALJ was not required to evaluate it in accordance with the factors listed in 20 C.F.R. § 404.1520c. [ECF No. 23, pp. 11-12]. The Commissioner also asserts that even a persuasive opinion is not controlling "with respect to the RFC finding" and substantial evidence supports the ALJ's RFC in the instant case. *Id.* at 13-14.

At the outset, the Undersigned notes that Urena provides no "legal authority for [his] conclusory position that [Dr. Spar-Alexander's] statement constitutes a 'medical opinion' which the ALJ was required to consider." *DeJesus v. Comm'r of Soc. Sec.*, No. 6:20-CV-1685-LHP, 2022 WL 833677, at *7 (M.D. Fla. Mar. 21, 2022). Moreover, the definition of a medical opinion has changed. *See Coats v. Kijakazi*, No. 8:21-CV-01762-AEP, 2023 WL 2706857, at *11 (M.D. Fla. Mar. 30, 2023) ("The previous definition of medical opinion was broader.").

Under the revised regulations, "[a] medical opinion is 'a statement from a medical source about what [Plaintiff] can still do despite [Plaintiff's] impairment(s)' and 'whether

[Plaintiff has] one or more impairment-related limitations or restrictions.'" 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). *McCrea v. Kijakazi*, No. 8:21-CV-2160-VMC-AEP, 2023 WL 2482628, at *5 (M.D. Fla. Feb. 24, 2023), report and recommendation adopted sub nom. *McCrea v. Comm'r, Soc. Sec. Admin.*, No. 8:21-CV-2160-VMC-AEP, 2023 WL 2477613 (M.D. Fla. Mar. 13, 2023).

> As one court observed:
>
> [S]tatements from a physician that a **claimant can never lift more than twenty pounds**, **cannot understand and follow complex instructions**, **cannot tolerate anything more than occasional interaction with the public**, or any other **comments about the extent to which a claimant can or cannot perform a work-related function** are examples of "medical opinions" for purposes of a Social Security disability analysis.

*Dye v. Comm'r of Soc. Sec.*, No. 5:20-CV-459-NPM, 2022 WL 970186, at *4 (M.D. Fla. Mar. 31, 2022) (emphasis added); *see also Pena v. Comm'r of Soc. Sec.*, No. 6:20-CV-2254-LHP, 2022 WL 3042442, at *5 (M.D. Fla. Aug. 2, 2022) (lifting limitation of no more than 15 pounds was a medical opinion); *Tyler v. Kijakazi*, No. 8:21-CV-2992-AEP, 2023 WL 2570049, at *6 (M.D. Fla. Mar. 20, 2023) (statement concerning the plaintiff's ability to perform tasks without proper assistance was a medical opinion); *Turner v. Kijakazi*, No. 3:21-CV-756-KFP, 2023 WL 2583272, at *3 (M.D. Ala. Mar. 20, 2023) (statement that the plaintiff "appeared to have the interpersonal skills required to relate to others in a work setting, [could] sustain the attention needed to do repetitive tasks[,] and was able to handle the day-to-day pressures of a work environment" was a medical opinion).

Of course, not *every* statement from a medical source constitutes a "medical opinion" under the revised regulations. *See Dale v. Comm'r of Soc. Sec.*, No. 2:20-CV-521-NPM, 2022 WL 909753, at *5 (M.D. Fla. Mar. 29, 2022) ("note recommending surgery [was] not a medical opinion because it [was] not a judgment about [the] [plaintiff]'s capabilities in a work setting"); *Blackmon v. Kijakazi*, No. 2:20-CV-00741-CWB, 2022 WL 5199814, at *5 (M.D. Ala. Oct. 5, 2022) (recommendation that the plaintiff "[e]levate [her] leg(s) as much as possible" was not a medical opinion); *Lucas v. Comm'r of Soc. Sec.*, No. 6:21-CV-1836 DAB, 2022 WL 2901219 (M.D. Fla. July 22, 2022) (statement that the plaintiff's pain level was 10/10 was not a medical opinion); *Vachon v. Comm'r of Soc. Sec.*, No. 6:20-CV-1521-MRM, 2022 WL 458604, at *6 (M.D. Fla. Feb. 15, 2022) (wheelchair prescription was not a medical opinion).

Moreover, statements about a plaintiff's inability to work or whether a plaintiff is disabled are reserved for the Commissioner. *See Whitehurst v. Comm'r of Soc. Sec.*, No. 5:19-CV-140-OC-PRL, 2020 WL 13596551, at *5 (M.D. Fla. Mar. 3, 2020) ("[T]he ALJ correctly concluded that [a doctor]'s statements that [the] [p]laintiff could not maintain gainful employment and was 'unable to work' were issues reserved for the Commissioner."); *Szoke v. Kijakazi*, No. 8:21-CV-502-CPT, 2022 WL 17249443, at *6 (M.D. Fla. Nov. 28, 2022) ("[T]he assessments of Drs. Libert, Tavares, and Lee that the [p]laintiff was disabled and/or unable to work address a question within the sole province of the Commissioner and accordingly did not have to be considered by the ALJ."); *Stokes v.*

*Kijakazi*, No. 8:20-CV-2194-CPT, 2022 WL 950654, at *5 (M.D. Fla. Mar. 30, 2022) ("Drs. Austin and Arroyo's observation that the [p]laintiff could only work with the appropriate prescription medicine is fairly characterized as an opinion about the [p]laintiff's ability to engage in substantial gainful activity, and the ALJ thus did not err by declining to address that assessment.").

In *Dye*, the court rejected the argument that a letter from a treating physician constituted a medical opinion under the revised regulations. 2022 WL 970186, at *4-5. The court included a copy of the letter, which contained statements that the plaintiff was "unable to work on a sustained basis," was "unable to resume any type of gainful employment due to physical impairment," "**fatigue, pain, weakness, and other symptoms [would] significantly and consistently interfere with work performance and attendance**," and would "see a continued decline in function over time." *Id.* at *4 (emphasis added). The *Dye* court found that because "[n]one of the statements in [the doctor]'s letter assess[ed] the extent to which [the plaintiff] [could] perform any particular function in a work setting, . . . they [did] not constitute 'medical opinions' for purposes of the applicable regulatory regime." *Id.* For this reason, the court concluded that "the ALJ was not required to assess anything in [the doctor's] letter for its persuasiveness or offer any reason for not finding its contents persuasive" and was only required to consider it. *Id.*

In *Matthews v. Comm'r of Soc. Sec.*, the court found a doctor's statement that "[the] [p]laintiff's depression and anxiety impacted her ability to work" was not a medical opinion. No. 8:22-CV-679-JSS, 2022 WL 17844054, at *10 (M.D. Fla. Dec. 22, 2022). The court noted that "this statement [did] not specifically explain *how* [the] [p]laintiff's depression and anxiety impacted her ability to work and *what* [the] [p]laintiff could still do despite these impairments." *Id.* (emphasis added). Accordingly, "the ALJ was not required to consider [the doctor's] report under the requirements of 20 C.F.R. § 404.1520c, and articulate its persuasiveness." *Id.*; *see also Jones*, No. 5:20-CV-247-NPM, 2021 WL 4352383, at *5 (M.D. Fla. Sept. 24, 2021) (statements that a plaintiff is "unable to work" and his symptoms are "moderately to severely impacting . . . vocational performance" were not medical opinions under the revised regulations).

In *Kelly R. v. Comm'r, Soc. Sec. Admin.*, the court determined that the statement that the plaintiff "(1) 'displays poor judgment'; (2) 'is significantly impaired in her ability to adequately care for herself'; (3) needs 'a supportive environment where supervision and assistance are present to aid with daily living activities' and 'a job setting that understands her limitations'" was not a medical opinion. No. 1:21-CV-222-CMS, 2022 WL 16707091, at *6 (N.D. Ga. Sept. 28, 2022). The court reasoned that the statement provided no specifics regarding the nature of the plaintiff's work-related limitations and was "too

vague and speculative to constitute a medical opinion or to support specific functional limitations." *Id.*[12]

The Undersigned similarly concludes that the at-issue statement from Dr. Spar-Alexander -- that "[Urena] has an occupational . . . impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks" -- is *not* a medical opinion under the revised regulations. While the statement provides an observation about Urena's "decrease in work efficiency" and asserts that Urena would have "intermittent periods of inability to perform occupational tasks" the statement contains no reference to what Urena "can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions" to perform the physical, mental, environmental and other demands of work. 20 C.F.R. § 404.1513(a)(2)(i)-(iv).

---

[12]    *See also Cassandra O. v. Kijakazi*, No. 22-CV-1587 (ECT/DTS), 2023 WL 3855306, at *4 (D. Minn. Apr. 11, 2023), report and recommendation adopted, No. 22-CV-1587 (ECT/DTS), 2023 WL 3558155 (D. Minn. May 18, 2023) (statement that the plaintiff had "difficulty w[ith] [] attention, focus, memory, distress tolerance" and listed the "maximum number of hours [the plaintiff] can work per week" was "at most 25 hours/week" was not a medical opinion because aside from working 25 hours per week, it did not address what the plaintiff could do); *Cory G. v. Kijakazi*, No. 2:21-CV-00569 JNP, 2023 WL 2570025, at *3 (D. Utah Mar. 20, 2023) (finding that the plaintiff had "upper extremity limitations" was not a medical opinion because this "diagnosis neither explained what [the] plaintiff could or could not do during a workday nor detailed any limitation with particularity, either of which would be necessary to qualify as a 'medical opinion'" citing (20 C.F.R. § 404.1513(a)(2)).

Urena further states that the evidence the ALJ did credit was not a "medical opinion" but rather a report that "simply noted that Plaintiff has mild cognitive defects, attributed to his medication side-effects and lack of sleep" and was "not an evaluation of Mr. Urena's ability to perform any mental activities that is reflective of a medical opinion nor does it have any relationship to Mr. Urena's depression or anxiety." *Id.* at 34 (citing (R. 2903, 3225)). According to Plaintiff, "the ALJ erred by assigning this evidence persuasive weight in determining [his] mental [RFC] to perform detailed but uninvolved instructions; concentrate for two[-]hour increments; and frequently interact with coworkers, supervisors, and the public." *Id.*

Urena also asserts that the ALJ erred by not "cit[ing] to any specific medical facts or even persuasive non-medical evidence in the record that supports his mental RFC determination for Mr. Urena." *Id.*

These arguments are not persuasive because the ALJ (not a medical source) is tasked with determining a claimant's RFC and ability to work. *Coats v. Kijakazi*, No. 8:21-CV-01762-AEP, 2023 WL 2706857, at *14 (M.D. Fla. Mar. 30, 2023). "[T]here is **no requirement** that an ALJ base the RFC finding on a medical source's opinion." *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962-SPC-NPM, 2022 WL 598036, at *8 (M.D. Fla. Feb. 10, 2022), report and recommendation adopted, No. 2:20-CV-962-SPC-NPM, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022); *Ryan B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1607-DB, 2022 WL 17488614, at *8 (W.D.N.Y. Dec. 7, 2022) ("[The] [p]laintiff's argument wrongly presumes

that RFCs are medical determinations, and thus, outside the ALJ's expertise. As explained above, RFC is an administrative finding, not a medical one."). Moreover, Urena cites to no record evidence which would support a more restrictive mental RFC.

   **B.**     *Urena's Subjective Testimony*

Urena also argues that the ALJ erred in his assessment of his subjective testimony. He asserts that the ALJ's assessment of his subjective testimony is not supported by substantial evidence because: (1) Plaintiff's "limited activities [of] daily living and the available clinical and objective evidence is not contrary to a finding of disability based on the medical opinions of every [examining] doctor"; (2) "Plaintiff's subjective testimony[ ] mirrors the opinions from the treating and examining medical sources"; and (3) "20 C.F.R. § 404.1529(c)(2) makes clear that a claimant's allegations cannot be rejected solely 'because the available objective medical evidence does not substantiate [the claimant's] statements.'" [ECF No. 19, p. at 37].

Plaintiff further argues that he "has an honorable work history with significant earnings every year for 31 years prior to the onset of his disability" and therefore, he is not "an individual who is exaggerating or has no desire to work." *Id.*

The Commissioner responds that "[t]he ALJ properly applied the [correct] standard and Plaintiff has shown no error." [ECF No. 23, p. 15]. For the reasons discussed below, the Undersigned agrees with the Commissioner and finds no error in the ALJ's evaluation of Urena's subjective testimony.

Evaluating a claimant's subjective testimony is a two-part inquiry:

"Step one is to determine whether the individual has a medically
determinable impairment that could reasonably be expected to produce the
alleged symptoms. . . . Step two is to evaluate the intensity and persistence
of an individual's symptoms, such as pain, and determine the extent to
which an individual's symptoms limit [his] ability to perform work-related
activities." *Contreras-Zambrano v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 700,
703 (11th Cir. 2018). An ALJ considers "whether there are any
inconsistencies in the evidence and the extent to which there are any
conflicts between [a claimant's] statements and the rest of the evidence,
including [claimant's] history, the signs and laboratory findings, and
statements by [the claimant's] medical sources or other persons about how
[his] symptoms affect [him]. [A claimant's] symptoms, including pain,
will be determined to diminish [his] capacity for basic work activities to the
extent that [his] alleged functional limitations and restrictions due to
symptoms, such as pain, can reasonably be accepted as consistent with the
objective medical evidence." 20 C.F.R. § 404.1529(c)(4).

*Gleicher v. Kijakazi*, No. 21-CV-60014-RS, 2022 WL 4596706, at *3 (S.D. Fla. Sept. 30, 2022)

(alterations in original).

"Failure to articulate the reasons for discrediting subjective testimony requires, as

a matter of law, that the testimony be accepted as true." *Venturella v. Kijakazi*, No. 21-CV-

61838, 2022 WL 4110699, at *6 (S.D. Fla. Aug. 18, 2022), report and recommendation

adopted, No. 21-61838-CIV, 2022 WL 4110339 (S.D. Fla. Sept. 8, 2022) (quoting *Whitmore

v. Soc. Sec. Admin., Comm'r*, 855 F. App'x 641, 643 (11th Cir. 2021)). Moreover, an ALJ must

articulate explicit and adequate reasons for discrediting a claimant's subjective

testimony. *See Lugo v. Kijakazi*, No. 21-CV-60019, 2023 WL 3259437, at *12 (S.D. Fla. Mar.

27, 2023), report and recommendation adopted, No. 21-60019-CIV, 2023 WL 3249398 (S.D.

Fla. May 4, 2023) ("When discrediting a claimant's subjective allegations of disabling

symptoms, the ALJ must articulate 'explicit and adequate' reasons for doing so, or 'the implication must be so clear as to amount to a specific credibility finding.'" (quoting *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995)).

So long as it is supported by substantial evidence, "[the Eleventh Circuit] will not disturb a properly articulated credibility finding[.]" *Belser v. Soc. Sec. Admin., Comm'r*, No. 20-12121, 2021 WL 6116639, at *6 (11th Cir. Dec. 27, 2021).

Here, the ALJ "[found] that [Urena]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [his] decision." (R. 23).

The ALJ determined that although "[Urena] testified to limitations caused by his impairments . . . the record d[id] not demonstrate they limit[ed] him any more than assessed." (R. 33). The ALJ observed that:

> [Urena]'s subjective complaints of low back pain, as outlined [in the Decision] and in his testimony, **contrast[ed] sharply with many of the objective imaging studies and clinical examinations**. For instance, an August 2, 2019, CT of the lumbar spine showed a "[n]ormal lumbar spine." (Ex. 26F/18) An MRI of the lumbar spine performed the same date reported an "[u]nremarkable lumbar spine." (Ex. 26F/16). These imaging results [were] consistent with the essentially normal objective clinical findings regarding muscle strength, sensory, and reflex testing conducted in August 2019. (Ex. 26F, pp. 86-88).

(R. 28 (emphasis added)).

38

He also noted that Urena had received "treat[ment] for chronic pain and treatment records document[ed] excellent pain relief with conservative measures." (R. 33). Moreover, "the treatment records show[ed] that [Urena] ha[d] not been fully compliant with prescribed treatment measures and still ha[d] effective options for management of his pain and mental health symptoms that he ha[d] yet to exhaust." *Id.*

The ALJ also noted that "subjective symptoms notwithstanding, [Urena] was engaging in gym like activities in March 2018," had plans in 2019 to visit New York, had traveled to the Dominican Republic in January 2020 and July 2021, visited his children in Georgia in 2021, and:

> [c]ontinued [to] engage[ ] in a wide variety of ADLs including taking his son to and from school, cooking, driving, shopping for groceries, doing the laundry, watching T.V., spending time with his son, helping his son with his homework, and walking his dog for about 15-20 minutes three to four times a day [which were] further . . . inconsistent with the degree of severity alleged.

(R. 33-34). The ALJ also noted that Urena reported going out more often, going to the park with his son, and taking brisk walks during a counseling session in March 2021. (R. 34).

Here, substantial evidence supports the ALJ's finding that Urena's statements concerning the intensity, persistence and limiting effects of his symptoms were not consistent with the medical evidence and other record evidence. The ALJ provided multiple reasons for his determination that Urena's testimony did not support the intensity of his symptoms, including Urena's activities of daily living and travel.

In *Matos v. Comm'r of Soc. Sec.*, the Eleventh Circuit found that "substantial

evidence supported the ALJ's finding that [the plaintiff]'s statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the objective medical evidence" where:

> the ALJ reasonably relied on Matos's statements that she engaged in a variety of daily living activities such as independent dressing and grooming, cooking, cleaning, shopping, driving, going on family vacations, and taking care of her family. While Matos testified that she did not care how she looked, multiple psychiatric providers noted that she was casually or well dressed and presented with good hygiene. And while Matos testified that she could not go places where there were a lot of people, she also testified to the contrary that she enjoyed the cruise she went on for her father's birthday. Accordingly, substantial evidence support[ed] the ALJ's evaluation of Matos's subjective complaints.

No. 21-11764, 2022 WL 97144, at *7 (11th Cir. Jan. 10, 2022). Similarly here, the ALJ's articulated reasons for not fully crediting Urena's subjective testimony are supported by substantial evidence.

Moreover, Plaintiff's argument regarding the ALJ's purported failure to consider his work history is not persuasive. In *Gleicher*, this Court rejected a similar claim "that the ALJ failed to consider [Gleicher]'s 'honorable work history.'" This Court noted that "[a]lthough the ALJ's [d]ecision did not reference [Gleicher]'s work history, [Gleicher] testified about his 20-year employment history in IT support and his recent unsuccessful attempt to work, which the ALJ considered" and "[t]here [was] no rigid requirement that the ALJ specifically refer to every piece of evidence in his [d]ecision, as long as the ALJ's [d]ecision is not a broad rejection of the evidence." 2022 WL 16829691, at *8.

Similarly here, during the first administrative hearing on April 24, 2020, Urena

testified to having worked as a police officer for 15 years (R. 98) and, as noted in *Gleicher*, the ALJ is not required to discuss every piece of evidence so long as his decision demonstrates that he considered the record as a whole. 2022 WL 16829691, at *8.

In sum, the ALJ's assessment of Urena's subjective testimony is supported by substantial evidence and is not grounds for remand. The ALJ clearly articulated his specific reasons for discounting Plaintiff's testimony and those reasons are supported by the record evidence. More is not required.

    **C.**    *Hypothetical to the VE*

Lastly, Urena argues that the ALJ's decision is not supported by substantial evidence because the ALJ improperly relied on a flawed hypothetical to the VE. [ECF No. 19, pp. 38-39]. Specifically, Plaintiff points out that "the ALJ found that [he] has 'moderate' limitations interacting with others and in concentrating, persisting, or maintaining pace" but "the accepted hypothetical by the ALJ only limited Plaintiff mentally to follow detailed but uninvolved instructions; concentrate in two[-]hour increments; and frequently interact with coworkers, supervisors, and the public." [ECF No. 19, p. 39 (citing (R. 20, 72))].

Because remand is needed, it is not necessary to address this argument.

**VI.**    **Conclusion**

The Undersigned **respectfully recommends** that the District Court **grant** Plaintiff's summary judgment motion, **deny** the Commissioner's summary judgment

motion, and that the case be **remanded** pursuant to 42 U.S.C. § 405(g), with instructions to the ALJ to address the opinion evidence in accordance with 20 C.F.R. § 416.920c.

## VII.   Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, Miami, Florida, on July 28, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All counsel of record

42